1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA A. DOYLE, | 1:06-CV-1863 AWI JMD HC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| TINA HORNBECK, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Los Angeles County Superior Court. (Answer at 1.) The trial court sentenced her to an indeterminate term of fifteen-years-to-life following her conviction for second degree murder. (Id.)

On December 28, 2004, Petitioner appeared before the California Board of Parole Hearings for a parole consideration hearing. The Board denied parole. (Answer at 2.)

Petitioner filed a petition for writ of habeas corpus in the Madera County Superior Court challenging the Board's denial of parole. The petition was transferred to the Los Angeles County Superior Court, which denied the petition in a reasoned opinion. (Answer at 3; Exs. 5-6.)

1    Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal.  The

2    court summarily denied the petition.  (Answer at 3; Exs. 7-8.)

3    Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  The

4    court summarily denied the petition.  (Answer at 3; Exs. 9-10.)

5    On November 2, 2006, Petitioner filed the instant petition in the Central District of

6    California.  On December 22, 2006, the petition was transferred to this Court.  The sole ground

7    raised in the petition is that the Board's denial of parole violated Petitioner's due process rights.

8    On July 25, 2007, Respondent filed an answer to the petition.

9                                    **FACTUAL BACKGROUND**[1]

10    In 1985, Petitioner and Karen Severson were friends of Michele Avila, whom they had

11    known for many years, but were jealous of her popularity with boys.  When Petitioner saw her

12    former boyfriend Victor Amaya with Avila in July 1985, she threatened to kill Avila.

13    Severson was "going with" Randy Fernandez in 1984 and 1985.  In July 1985, she urged him

14    to throw lighted firecrackers at Avila to show his loyalty to Severson, and he did so.  Severson

15    nevertheless accused Fernandez and Avila of flirting and said that Avila was going to "get herself

16    mixed up with somebody that was going to kill her for what she did."  Severson confronted Avila

17    about Fernandez and started a fight with her.

18    In September 1985, Severson told Avila's mother that her daughter was a "tramp."  She also

19    approached Avila in a park, yelled at her, and slapped her face.

20    In October 1985, Severson and Petitioner were considerably larger than Avila.  Severson

21    weighed 200 pounds and was five feet, two inches tall; Petitioner was five feet, six inches tall and

22    weighed 135 pounds.  Avila, by contrast, was petite; four feet, ten inches, and 97 pounds.

23    On October 1, 1985, Eva Chirumbolo, a friend of Avila, Petitioner, and Severson,

24    accompanied them to the Colby Ranch area of Angeles National Forest.  Once there, Petitioner and

25    Severson accused Avila of promiscuity.  The group then walked between 100 and 200 yards down a

26    path to a creek.  Avila cried and Petitioner continued to berate her.  Petitioner grabbed Avila's hair

27

28
_____

[1] The facts are derived from the factual summaries set forth in the February 14, 1994 opinion of the California Court of Appeal and the May 27, 2005 opinion of the Los Angeles County Superior Court.  (Answer, Exs. 4, 6.)

1  and cut some of it off.  Petitioner walked into the creek and told Avila to follow.  Severson nudged

2  Avila toward the creek, and Petitioner grabbed Avila's wrist.  Petitioner and Severson held Avila's

3  head under shallow water until she stopped moving.  At some point during the attack, Avila was

4  gagged and her hands were tied behind her back.  Petitioner and Severson then placed a one hundred

5  pound log on top of Avila's body and left.

6       Avila's mother reported her missing the following day.  The case remained unsolved for three

7  years.  During that time Severson moved in with Avila's mother.  Petitioner visited Avila's mother

8  occasionally, furnished false leads, and sent Avila's mother a card with twenty dollars enclosed.  Eva

9  Chirumbolo eventually came forward and told police who murdered Avila.

10  **I. Jurisdiction**

11       Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

12  to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

13  the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

14  375 n.7 (2000).  Petitioner asserts that she suffered violations of her rights as guaranteed by the U.S.

15  Constitution.  In addition, Petitioner is confined at Valley State Prison for Women, which is located

16  within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).  Accordingly, the

17  Court has jurisdiction over the action.

18       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

19  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

20  Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997),

21  *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997),

22  *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only

23  applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment

24  of the AEDPA; thus, it is governed by its provisions.

25  **II. Legal Standard of Review**

26       This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

27  pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

28  Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

1    The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

2  Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

3  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of

4  the claim "resulted in a decision that was contrary to, or involved an unreasonable application of,

5  clearly established Federal law, as determined by the Supreme Court of the United States" or

6  "resulted in a decision that was based on an unreasonable determination of the facts in light of the

7  evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at

8  70-71; see Williams, 529 U.S. at 413.

9    As a threshold matter, this Court must "first decide what constitutes 'clearly established

10  Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538 U.S. at 71,

11  quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

12  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

13  of the relevant state-court decision."  Id., quoting Williams, 592 U.S. at 412.  "In other words,

14  'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set

15  forth by the Supreme Court at the time the state court renders its decision."  Id.

16    Finally, this Court must consider whether the state court's decision was "contrary to, or

17  involved an unreasonable application of, clearly established Federal law."  Lockyer, 538 U.S. at 72,

18  quoting 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may grant

19  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

20  question of law or if the state court decides a case differently than [the] Court has on a set of

21  materially indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

22  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

23  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

24  applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.

25    "[A] federal court may not issue the writ simply because the court concludes in its

26  independent judgment that the relevant state court decision applied clearly established federal law

27  erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A

28  federal habeas court making the "unreasonable application" inquiry should ask whether the state

1    court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

2            Petitioner has the burden of establishing that the decision of the state court is contrary to or

3    involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle,

4    94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

5    Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

6    decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.

7    1999).

8            AEDPA requires that we give considerable deference to state court decisions.  The state

9    court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

10   interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), cert. denied,

11   537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

12   **III.  Review of Petitioner's Claim**

13           Petitioner argues that the Board's denial of parole violated her due process rights because the

14   decision was not supported by relevant evidence.

15           This claim was presented in a petition for writ of habeas corpus to the Los Angeles County

16   Superior Court, which denied the petition in a reasoned opinion.  (Answer, Exs. 5-6.)  The issue was

17   then raised in petitions for writ of habeas corpus to the California Court of Appeal and California

18   Supreme Court, which summarily denied the petitions.  (Answer, Exs. 7-10.)  The Court of Appeal

19   and California Supreme Court, by their "silent orders" denying the petitions, are presumed to have

20   denied the claims presented for the same reasons stated in the opinion of the lower court.  Ylst v.

21   Nunnemaker, 501 U.S. 797, 803 (1991).

22           In rejecting Petitioner's claim, the Superior Court found that there was some evidence

23   supporting the Board's determination that Petitioner was unsuitable for parole based on her

24   commitment offense, her prior unstable social history, and the fact that her gains were recent and she

25   had not sufficiently participated in self-help programming.  (Answer, Ex. 6.)

26           "We analyze a due process claim in two steps. '[T]he first asks whether there exists a liberty

27   or property interest which has been interfered with by the State; the second examines whether the

28

1  procedures attendant upon that deprivation were constitutionally sufficient.'" Sass v. California Bd.

2  of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006).  California's parole scheme gives rise to a

3  cognizable liberty interest in release on parole.  Id. at 1127-28.  However, "because parole

4  proceedings are not part of the criminal prosecution, the full panoply of rights due a defendant in a

5  criminal proceeding is not constitutionally mandated.  Instead, the due process rights that flow from

6  a liberty interest in parole are limited: the prisoner must be provided with notice of the hearing, an

7  opportunity to be heard, and if parole is denied, a statement of the reasons for the denial.  In addition,

8  due process requires that 'some evidence' support the [determination regarding parole], and that the

9  evidence relied upon must possess 'some indicia of reliability.'  The 'some evidence' standard is

10  satisfied if there is any reliable evidence in the record that could support the conclusion reached.

11  Finally, determining whether the 'some evidence' standard was met does not require examination of

12  the entire record, independent assessment of the credibility of witnesses, or the weighing of

13  evidence."  Rosenkrantz v. Marshall, 444 F.Supp.2d 1063, 1079-80 (C.D. Cal. 2006) (citations

14  omitted); see also Sass, 461 F.3d at 1128-29.

15      The state court's determination that Petitioner's rights were not violated was not

16  unreasonable.  Petitioner was provided a parole consideration hearing in which she and her counsel

17  took part.  (Answer, Ex. 2.)  The Board also stated the reasons for the denial of parole on the record

18  at the hearing.  (Id. at 70-74.)

19      One reason given by the Board for denying parole was the nature of Petitioner's commitment

20  offense.  The Board identified the fact that Petitioner and her crime partner physically assaulted the

21  victim, held her head under water until she stopped struggling, then covered the body with a log to

22  prevent discovery.  The Board noted that the alleged motive of peer pressure and jealously was

23  trivial in relation to the crime.  The Board also found it "especially disturbing" that Petitioner and her

24  crime partner had very close contact with the victim's family for two and a half years following the

25  murder, but "carried on a charade" that they did not know who committed the crime.  (Answer, Ex. 2

26  at 70-72.)

27      These findings were sufficient to establish one circumstance of Petitioner's unsuitability for

28

parole, as they show that Petitioner committed the offense in an especially heinous, atrocious, or cruel manner, as defined in the parole guidelines.  See Cal. Code Regs., tit. 15, § 2402(c)(1) (stating that factors to be considered in determining whether offense was especially heinous, atrocious, or cruel include committing an offense in a manner demonstrating exceptionally callous disregard for human suffering or with a motive that is inexplicable or very trivial in relation to the offense).

The Board also cited, among other things, Petitioner's unstable social history, including her use of drugs and alcohol and her failure to correct her substance abuse when given the opportunity, and the fact that Petitioner's gains were recent and she had not sufficiently participated in self-help programs.  The Board explained that Petitioner had not admitted to her full participation in the crime, or to her actual history of substance abuse, and that she needed to continue to participate in self-help programs to delve into the factors that caused her to commit the crime and to develop the skills needed to remain clean and sober and to deal with stress in a non-destructive manner. (Answer, Ex. 2 at 72-74.)  These facts were properly considered and had some indicia of reliability. See Answer, Ex. 3 at 5-7; Ex. 2 at 18-24, 27-31, 51, 55-56, 62-65; see also Cal. Code Regs., tit. 15, § 2402(b) ("All relevant, reliable information available to the panel shall be considered in determining suitability for parole."); Cal. Code Regs., tit. 15, § 2402(c) (stating that the enumerated unsuitability factors are only set forth as general guidelines).

The evidence taken as a whole is sufficient to show that it was not unreasonable for the state court to conclude that there was "some evidence" supporting the Board's determination that Petitioner posed an unreasonable risk of danger to society if released from prison.  See Cal. Code Regs., tit. 15, § 2402(b) ("Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability."); see Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (finding "some evidence" standard satisfied based on gravity of convicted offenses in combination with previous offenses).

### RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

1   Respondent.

2       This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

3   States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

4   of the Local Rules of Practice for the United States District Court, Eastern District of California.

5   Within thirty (30) days after being served with a copy, any party may file written objections with the

6   court and serve a copy on all parties.  Such a document should be captioned "Objections to

7   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

8   filed within ten (10) court days (plus three days if served by mail) after service of the objections.

9   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

10  parties are advised that failure to file objections within the specified time may waive the right to

11  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12

13

14  IT IS SO ORDERED.

15  **Dated:    September 17, 2008              /s/ John M. Dixon**

16                        UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28